IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **HOLLY H. GAUL** | : | **CIVIL ACTION** |
| | : | |
| vs. | : | |
| | : | No. 07-351 |
| | : | |
| | : | |
| **JO ANNE B. BARNHART,** | : | |
| **Commissioner of Social Security** | : | |

## ORDER AND MEMORANDUM

### ORDER

**AND NOW**, this 25th day of August, 2008, after careful review and independent consideration of plaintiff's Request for Review and defendant's Response to the Request for Review; the Report and Recommendation of Elizabeth T. Hey, United States Magistrate Judge, dated December 20, 2007; and plaintiff's Objections to Magistrate Judge's Report and Recommendation and defendant's response thereto, for the reasons stated in the attached Memorandum, **IT IS ORDERED** as follows:

    1. The Report and Recommendation of Elizabeth T. Hey, United States Magistrate Judge, dated December 20, 2007, is **APPROVED** and **ADOPTED** as supplemented and amended in this Memorandum;

    2. Plaintiff's Objections to the Magistrate Judge's Report and Recommendation are **OVERRULED**; and,

    3. The decision of the Commissioner denying disability insurance benefits is **AFFIRMED**.

**MEMORANDUM**

**I.  INTRODUCTION**

Plaintiff, Holly Gaul, filed this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her claim for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act.  Pursuant to Local Rule 72.1 and 28 U.S.C. §636(b)(1)(B), the Court referred the case to United States Magistrate Judge Elizabeth T. Hey for a Report and Recommendation.

Magistrate Judge Hey issued a Report and Recommendation on December 20, 2007, recommending that the final decision of the Commissioner be affirmed.  Plaintiff filed timely Objections to the Report and Recommendation and the Commissioner filed a response.  For the reasons that follow, the Court overrules plaintiff's Objections, and approves and adopts the Report and Recommendation as supplemented and amended in this Memorandum.  Accordingly, the final decision of the Commissioner to deny plaintiff's claim for DIB under Title II of the Social Security Act is affirmed.

**II.  BACKGROUND**

The background of this case is set forth in detail in the Magistrate Judge's Report and Recommendation and will be recited in this Memorandum only as necessary to address the issues presented.

**III.  STANDARD OF REVIEW**

Under the Social Security Act, a claimant is disabled if she is unable to engage in "any substantial gainful activity by reason of any medically determinable physical or mental

impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505. "The Social Security Administration has promulgated a five-step evaluation process to determine whether an individual is disabled." Allen v. Barnhart, 417 F.3d 396, 401 n.2 (3d Cir. 2005) (quoting Sykes v. Apfel, 228 F.3d 259, 262-63 (3d Cir. 2000)) (internal citations omitted); see also 20 C.F.R. § 404.1520(a)(4). That process is "sequential," meaning the Commissioner follows the five steps "in a set order." 20 C.F.R. § 404.1520(a)(4).

Under the five-step evaluation process, the Commissioner must determine whether a claimant: (1) is currently employed; (2) has a severe impairment; (3) has an impairment which meets or equals the requirements of a listed impairment; (4) retains the "residual functional capacity"[1] ("RFC") to perform past relevant work; and (5) if the claimant cannot perform past relevant work, whether the claimant is able to perform other work in view of her age, education and work experience. See 20 C.F.R § 404.1520(a)(4)(i)-(v); Allen, 417 F.3d at 401 n.2. "The claimant bears the burden of proof for steps one, two, and four of this test. The Commissioner bears the burden of proof for the last step." Allen, 417 F.3d at 401 n.2.

Once a determination of eligibility for benefits is made by the Commissioner, a claimant may request reconsideration if she is dissatisfied with the Commissioner's decision. 20 C.F.R. § 404.900. Thereafter, a claimant who remains dissatisfied may request a hearing before an ALJ and, finally, review by the Appeals Council. Id. If the Appeals Council declines to review a claim, the ALJ's determination becomes the final decision of the Commissioner and the decision

---

[1] "Residual functional capacity" is defined in the regulations as "what a [claimant] can still do despite his limitations." Burns v. Barnhart, 312 F.3d 113, 119 (3d Cir. 2002) (citing 20 C.F.R. § 416.945(a)).

becomes ripe for judicial review.  See Fargnoli v. Massanari, 247 F.3d 34, 36 n.2 (3d Cir. 2001); 20 C.F.R. § 404.900.

"Judicial review of the Commissioner's final decision is limited.  This Court is bound by the factual findings of the Commissioner if they are supported by substantial evidence and decided according to correct legal standards."  Przegon v. Barnhart, 2006 WL 562966, at *2 (E.D. Pa.  Mar. 6, 2006).  "Substantial evidence does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir.1999).  "Overall, the substantial evidence standard is deferential and includes deference to inferences drawn from the facts if they, in turn, are supported by substantial evidence.  To determine whether a finding is supported by substantial evidence, we must review the record as a whole."  Schaudeck v. Comm'r of Soc. Sec. Admin., 181 F.3d 429, 431 (3d Cir. 1999) (citations omitted).

A district court judge makes a de novo determination of those portions of a magistrate judge's report and recommendation to which objection is made.  28 U.S.C. § 636(b)(1)(c).  The Court may "accept, reject or modify, in whole or in part, the magistrate's findings or recommendations."  Brophy v. Halter, 153 F. Supp. 2d 667, 669 (E.D. Pa. 2001).

**IV.  DISCUSSION**

Plaintiff objects to the Report and Recommendation of the Magistrate Judge on four grounds: (1) the ALJ erred in concluding that plaintiff's depression was non-severe; (2) the ALJ erred by not "recontacting" plaintiff's treating physician for further clarification; (3) the ALJ

erred in formulating plaintiff's RFC; and (4) the ALJ erred in assessing plaintiff's credibility.[2]
The Court addresses plaintiff's objections in turn.

### A. Objection: The ALJ Erred in Concluding that Plaintiff's Depression was Non-Severe

On June 23, 2006, the ALJ issued a decision in which he found that plaintiff's only "severe impairment" was diabetes and that she "had the residual functional capacity to perform light exertion work . . . ." (R. 13-14.)[3] The ALJ further found that plaintiff's "past relevant work as [a] medical assistant did not require the performance of work-related activities precluded by [her] residual functional capacity." (R. 16.) For these reasons, the ALJ concluded that plaintiff was not "under a 'disability,' as defined in the Social Security Act, at any time through December 31, 2000, the date last insured" and, thus, denied her application for benefits. (R. 16.)

With respect to plaintiff's claims of depression, the ALJ stated as follows:

> In February, 2000, [plaintiff's] primary physician noted that [plaintiff] suffered from depression. Three [sic] is no mention of depression again until June 2001. The record also does not contain any evidence of formal mental health treatment or prescribed medication [] through the date last insured. Based upon the evidence of record through the date last insured, the undersigned finds that [plaintiff] suffered from mild restriction of activities of daily living, mild difficulties maintaining social functioning, and mild difficulties in maintaining concentration, persistence or pace. Therefore, this impairment [depression] is non-severe.[4]

(R. 13.)

---

[2] The arguments presented in plaintiff's objections are essentially the same arguments presented in her initial request for review.

[3] The Administrative Record is referred to as "R."

[4] A non-severe impairment is a "slight" abnormality which has a minimal effect on an individual such that it would not be expected to interfere with the individual's ability to work. See McCrea v. Comm'r of Soc. Sec., 370 F.3d 357, 360 (3d Cir. 2004).

In her Report and Recommendation, the Magistrate Judge concluded that the Commissioner's determination that plaintiff's depression was "non-severe" was supported by substantial evidence. The Magistrate Judge noted that "although the record suggests that Plaintiff was beginning to experience symptoms of depression . . . in 2000, there is insufficient evidence to support a finding that Plaintiff's depressive condition had anything more than a minimal effect on her ability to work . . . prior to her last date insured . . . ." (Rep. & Rec. 14.) The Magistrate Judge further noted that "[t]he record does not even establish that Plaintiff had been diagnosed with depression during the relevant time period, but rather suggests that she was being assessed for a possible diagnosis. Thus, while the severity regulation [] is relatively easy to meet, it has not been met here with respect to Plaintiff's depression." (Rep. & Rec. 16.)

Plaintiff objects to this determination by the Magistrate Judge, arguing that the "Magistrate has not considered whether the plaintiff's depression presented as something more than a 'slight abnormality,' during the relevant time period." (Pl.'s Obj. 1.) Plaintiff argues, *inter alia*, that there is "express evidence in the record" that she suffered "with mental health problems" prior to her last date insured and that this evidence was ignored by the ALJ and Magistrate Judge. The "express evidence" to which plaintiff refers includes: (1) evidence from 1994 that plaintiff was "receiving psychotherapeutic treatment with a physician" to "help her deal with her untoward fear of hypoglycemia"; (2) "progress notes" from her primary physician from 2000 through 2003; and (3) witness testimony and written witness statements alleging that plaintiff "began suffering from severe depression prior to the date last insured of December 31, 2000 . . . ." (Pl.'s Obj. 1-3.)

6

Plaintiff's objection based on her depression is overruled. Upon review of the record, the Court concludes that the ALJ's determination that plaintiff's depression was "non-severe" was supported by substantial evidence. The evidence that plaintiff was treated by a physician in 1994 for fear of hypoglycemia does not establish that plaintiff suffered from depression during the relevant period or that any depression she may have suffered during the relevant period constituted a severe impairment. Further, as noted by the Magistrate Judge, except for the single reference to depression in her physician's February 2000 treatment notes (R. 145), plaintiff's medical records "do not memorialize any reported depression, despite well-documented and persistent diabetes related problems over the same period." (Rep. & Rec. 15.) Moreover, the February 2000 reference to depression is not "a diagnosis of depression," as plaintiff alleges. (See Pl.'s Obj. 3.) To the contrary, the record reflects that that reference by plaintiff's primary physician was made under a heading entitled "Assess." (R. 145.) Finally, witness testimony that plaintiff "began suffering from severe depression prior to the last date insured" does not require a finding that plaintiff's alleged depression was severe, where the medical evidence of record does not support that claim.[5] See generally 20 C.F.R. § 404.1527.

**B. Objection**: **The ALJ Erred in Not "Recontacting" Plaintiff's Treating Physician**

In reaching his decision on plaintiff's claims of disability, the ALJ "afforded limited weight" to the April 26, 2006 opinion of Dr. David Callahan, plaintiff's treating physician. (R.

---

[5] In a footnote, plaintiff argued that "additional records" exist which show that she suffered from depression since 1997. Plaintiff acknowledges that she is barred from introducing that evidence at this stage of review and states that she "has not relied on these records in her brief." (Pl.'s Obj. 2.) Because the alleged new evidence is not part of the administrative record, and because plaintiff has not shown good cause for not presenting that evidence to the ALJ, the Court cannot and does not consider it. Matthews v. Apfel, 239 F.3d 589, 592-93 (3d Cir. 2001).

15-16.) On April 26, 2006, Dr. Callahan reported that since February 1, 2000, plaintiff suffered from, *inter alia*, fatigue, blurred vision, retinopathy, difficulty concentrating and maintaining attention, and numbness and tingling. (R. 15.) Dr. Callahan "indicated that [plaintiff's] fatigue was such as to prevent [her] from performing normal, full-time work activities on a frequent basis (i.e. absent 3-4 days per month) and that she would need to lie down for 1-2 hours during the day." (R. 15, 257-61.)

The ALJ concluded that Dr. Callahan's opinion was not supported by the medical record. (R 15.) Specifically, the ALJ noted that Dr. Callahan's own treatment notes from February, 2000 stated that plaintiff "exhibited no signs of retinopathy." (R 15.) Further, the ALJ noted that Dr. Callahan's "physical examination notes from 2000 do not document significant complaints or clinical signs of numbness/tingling." (R. 15.) For these reasons, the ALJ discounted Dr. Callahan's April 26, 2006 opinion and stated that it appeared to more accurately reflect plaintiff's "current condition and current subjective complaints, rather than her condition through her last date insured." (R. 15-16.)

Plaintiff maintains that the ALJ erred in according "limited weight" to Dr. Callahan's opinion. (Pl.'s Obj. 3.) She argues that Dr. Callahan's opinion was supported by the medical record and entitled to "controlling weight." (Pl.'s Obj. 5.) In support of this argument, plaintiff cites "supportive records and diagnostic testing such as the recurrent Hemoglobin A1c testing during the year 2000 and afterwards, which conclusively proved that Plaintiff's blood sugar could not be controlled over the preceding three months from when the test was performed." (Pl.'s Obj. 3.) Plaintiff also asserts that the ALJ failed to "adequately consider the three inpatient hospitalizations for diabetic ketoacidosis in 2000." (Pl.'s Obj. 3.) Finally, plaintiff argues that,

8

"at a minimum, the ALJ erred in not recontacting the doctor for clarification on the basis of his opinions." (Pl.'s Obj. 5.)

The Magistrate Judge concluded in her Report and Recommendation that the ALJ properly discounted Dr. Callahan's 2006 opinion and was not required by the regulations to seek further clarification of that opinion under the circumstances. In reaching this conclusion, the Magistrate Judge cited medical evidence of record that conflicted with Dr. Callahan's 2006 opinion, including Dr. Callahan's own treatment notes from 2000. (Rep. & Rec. 18.) Reviewing the evidence, the Magistrate Judge noted that Dr. Callahan's notes do not "make any reference to fatigue associated with Plaintiff's medical condition." (Rep. & Rec. 19.) Moreover, Dr. Callahan's "own letter report dated May 13, 2004" stated that although plaintiff would be unemployable "in the next 1-3 months," she might thereafter be employable "doing light work, for example office/clerical duties," provided she kept her diabetes under reasonable control. (Rep. & Rec. 19, citing R. 164.) Accordingly, the Magistrate Judge concluded that "Dr. Callahan's reports from 2000 and 2004 are clearly inconsistent with his opinions that the symptoms and limitations Plaintiff exhibited in April 2006, were also present in February 2000." (Rep. & Rec. 19.)

The Court concludes that the ALJ did not err in discounting Dr. Callahan's 2006 opinion. "Although a treating physician's opinions are entitled to great weight when they reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time, an ALJ may reject a treating physician's opinion on the basis of contradictory medical evidence, and may afford a treating physician's opinion more or less weight depending upon the extent of supporting evidence." Hild v. Astrue, 2008 WL 2944610, at *4 (M.D. Pa. July 28,

2008) (citing Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir.1999)); see also Cosmas v. Comm'r of Soc. Sec., 2008 WL 2600674, at *2 (3d Cir. July 02, 2008) ("Although the opinion of a claimant's treating physician is usually entitled to deference, it only receives controlling weight when it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence [in the claimant's] record . . . .'") (citing 20 C .F.R. § 404.1527(d)(2)).  In this case, Dr. Callahan's 2006 opinion that plaintiff suffered from a number of medical illnesses in February 2000 that would prevent her from performing light work lacked supporting evidence.  Indeed, parts of Dr. Callahan's 2006 opinion were contradicted by his own notes from 2000 and 2004.[6]  Accordingly, the Court concludes that ALJ properly discounted Dr. Callahan's 2006 opinion in determining plaintiff's eligibility for benefits.

As to the question whether the ALJ was required to "recontact" Dr. Callahan for clarification as to his 2006 opinion, the Magistrate Judge correctly noted that a medical source need only be "re-contacted if the information received 'is inadequate for us [the Commissioner] determine whether you are disabled' or if the record is insufficient to reach a conclusion as to whether a claimant is disabled.'"  (Rep. & Rec. 20, citing 20 C.F.R. §§ 404.1512(e), 404.1527(c)(3)).  The Magistrate Judge concluded that the relevant regulations were not triggered

---

[6] In her objections, plaintiff's asserts that the Magistrate Judge violated the Chenery doctrine by relying on Dr. Callahan's 2004 letter report in concluding that substantial evidence supported the ALJ's decision.  (Pl.'s Obj. 4.)  This objection is overruled.  "The plaintiff confuses what is prohibited by the Chenery doctrine – a substitution of a court's reasoning for that of the ALJ - with what is required in order to determine whether the ALJ's reasoning is supported by substantial evidence – a review of the record before the ALJ as whole."  Hild v. Astrue, 2008 WL 2944610, at *7 (M.D. Pa. July 28, 2008) (internal citation and quotation omitted).  See also Schaudeck, 181 F.3d at 431.

in this case because (1) the ALJ did not find Dr. Callahan's opinions to be unclear or ambiguous; (2) the ALJ determined that the record was adequate to make a determination; and (3) Dr. Callahan's opinions were inconsistent and unsupported by "the clinical findings and other evidence of record related to the year 2000." (Rep. & Rec. 20-21.) The Court agrees with this assessment and overrules plaintiff's objection regarding the need to recontact Dr. Callahan.

### C. Objection: The ALJ Erred in Formulating Plaintiff's RFC

An individual's residual functional capacity is defined in the regulations as "the most [an individual] can still do" in a work setting "despite [her] limitations." 20 C.F.R. § 416.945(a). An RFC is expressed "in terms of exertional levels," such "sedentary, light, medium, heavy, and very heavy." (SSR 96-8p.) In this case, the ALJ concluded that plaintiff "had the residual functional capacity to perform light exertion work, which involves lifting up to 20 pounds and frequent sitting, standing and/or walking." (R. 14.)

Plaintiff argues that the ALJ erred in formulating her RFC "by failing to perform a function-by-function assessment as required by [Social Security Rule] 96-8p." (Pl.'s Obj. 5.) That rule states, *inter alia*, that the RFC assessment "must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis." (SSR 96-8p.) "Only after [such an assessment is made] may [an] RFC be expressed in terms of the exertional levels of work . . . ." (SSR 96-8p.)

In this case, the ALJ did not assess plaintiff's work-related abilities on a function-by-function basis before concluding that plaintiff "had the residual functional capacity to perform light exertion work." (R. 14.) Rather, the ALJ based his assessment of plaintiff's RFC on plaintiff's testimony, plaintiff's "Function Report," witness testimony at the administrative

hearing, and, significantly, a report by a "State Agency medical consultant" ("SAMC" or "state agency physician") that concluded that plaintiff could perform light exertion work, that is, work involving lifting up to 20 pounds, standing and/or walking for 6 hours in an 8 hour workday, and sitting for a total of about 6 hours in an 8 hour work day.  (R. 15, 182-89.)  The ALJ found the SAMC's report to be "consistent with and supported by the evidence of record with regard to the claimant's condition through her date last insured" and accorded that report "significant weight." (R. 14-15; R. 182-89.)

In her Report and Recommendation, the Magistrate Judge acknowledged that the ALJ did not perform a function-by-function assessment but nevertheless concluded that the ALJ's RFC determination could not "be found deficient on [that] basis."  (Rep. & Rec. 22.)  On this issue, the Magistrate Judge noted that the ALJ discussed plaintiff's limitations in "considerable detail" and "[m]ore importantly, . . . explicitly discussed, adopted and cited the R.F.C. assessment of a State agency physician, who in fact did perform a function-by-function assessment, including both exertional and non-exertional limitations."  (Rep. & Rec. 23.)  Accordingly, the Magistrate Judge concluded that the ALJ's RFC determination was supported by substantial evidence.

In objecting to this part of the Magistrate Judge's Report and Recommendation, plaintiff asserts that "there is nothing whatsoever in the [ALJ's] decision to suggest that the ALJ adopted the findings of [SAMC's] assessment or the individual functional limitations provided by the SAMC."  (Pl.'s Obj. 5.)  According to plaintiff, the Magistrate Judge's "statement that the ALJ 'adopted' this opinion . . . amounts to a recharacterization of evidence in order to make sense of the ALJs decision."  (Pl.'s Obj. 5.)  Such "recharacterization," plaintiff argues, violates the Chenery doctrine, which prohibits a court from substituting its own reasoning for that of the ALJ.

See Hild v. Astrue, 2008 WL 2944610, at *7 (M.D. Pa. July 28, 2008).  Plaintiff further argues that the ALJ's "failure to provide a formulation of RFC, which includes a function-by-function assessment, is reversible error, and at the least, requires remand to the ALJ for further consideration."  (Pl.'s Obj. 5.)

The Court disagrees that plaintiff's case must be remanded on the ground that the ALJ himself did not perform a function-by-function analysis in determining plaintiff's RFC.  The Third Circuit has held that an ALJ's findings of residual functional capacity must be accompanied by a "'clear and satisfactory explication of the basis on which it rests'" so that a reviewing court "may properly exercise its responsibility under 42 U.S.C. § 405(g) to determine if the Secretary's decision is supported by substantial evidence."  Fargnoli, 247 F.3d at 41 (quoting Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981)).  In this case, the ALJ provided such an explication.   In determining plaintiff's RFC, the ALJ discussed at length plaintiff's medical history, her self-reported limitations and abilities, her testimony, witness testimony, the medical opinions of plaintiff's primary physician and that of the state agency medical consultant, and other medical and non-medical evidence of record.  In so doing, the ALJ considered all the relevant evidence in accordance with the requirements of this Circuit and sufficiently explained his findings to permit a meaningful review of his decision. See Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 121 (3d Cir. 2000); Fargnoli, 247 F.3d at 41;  Jones v. Barnhart, 364 F.3d 501, 505 (3d Cir. 2004).

Moreover, other courts in this District have declined to remand cases on the ground that the ALJ failed to perform a function-by-function analysis where the ALJ's RFC determination is supported by substantial evidence.  See Bencivengo v. Apfel, 2000 WL 875684, at *2-3 (E.D. Pa.

13

June 14, 2000) (finding that ALJ's failure to "individually analyze each work related activity and the claimant's impairments" was "not reversible error" because the RFC determination was supported by substantial evidence); Adams v. Barnhart, 2004 WL 632704, at *2 (E.D. Pa. Jan. 29, 2004) (failure to individually analyze each work-related activity and claimant's impairments not reversible error, as long as the ALJ explains how he resolves inconsistencies in the record, as well as reasons for rejecting medical opinions in conflict with the ultimate RFC determination); Bovell v. Barnhart, 2006 WL 1620178, at *2 (E.D. Pa. June 9, 2006) (failure to provide function-by-function assessment harmless error where record, in particular, state agency's RFC assessment, reflected that plaintiff could perform light work). The Court finds those cases persuasive.

As to plaintiff's objection that the Magistrate Judge "recharacterized" the ALJ's opinion, the Court agrees that the Magistrate Judge's statement that the ALJ "explicitly . . . adopted . . . the RFC assessment of [the] State agency physician" is overbroad and this language in the Magistrate Judge's report is not adopted. However, this conclusion does not alter the Court's analysis. Although the ALJ did not explicitly "adopt" the state agency physician's RFC assessment, he did accord the assessment "significant weight" and explain that he relied on it, in part. As explained by the Magistrate Judge, the ALJ's determination was supported by substantial evidence. Accordingly, the Court will not remand the case.

**D. Objection: The ALJ Erred in Assessing Plaintiff's Credibility**

In his decision denying plaintiff disability benefits, the ALJ concluded that plaintiff's "statements concerning the intensity, duration and limiting effects" of her symptoms were "not entirely credible." (R. 15.) In making this determination, the ALJ stated that "while the claimant

suffer[d] from significant problems in 2000 when she was place[d] on the Insulin pump and adjustments were being made to her dosages, there is no evidence of any additionally [sic] hospitalizations." (R. 15.) Further, the ALJ observed that plaintiff "was able to maintain a wide variety" of social activities and serve as the "primary caretaker for young children." (R. 15.)

Plaintiff argues that the ALJ erred in making his credibility assessment. First, plaintiff asserts that the ALJ did not credit her testimony that she was hospitalized multiple times in 2000 for ketoacidosis despite record evidence to that effect. (Pl.'s Obj. 7.) Specifically, she asserts that in stating that there was "no evidence of any additionally [sic] hospitalizations," the ALJ was "attempting to directly rebut" her testimony that she was hospitalized three times for ketoacidosis during the relevant period. The Magistrate Judge rejected this argument and concluded that the ALJ adequately reviewed the record. (Rep. & Rec. 25.) In particular, the Magistrate Judge stated that "contrary to Plaintiff's assertion . . . the A.L.J. acknowledged Plaintiff's three hospitalizations in 2000 and obviously understood that they were caused by complications from diabetes, which the A.L.J. found to be a severe condition." (Rep. & Rec. 25.) The Court agrees with the Magistrate Judge.

The ALJ's opinion acknowledges plaintiff's three hospitalizations in 2000. It states, in relevant part: "The claimant was hospitalized one day in February 2000, secondary to diabetic ketoacidosis. . . . The claimant was again [sic] for diabetic ketoacidosis in July and October 2000." (R. 14, citing plaintiff's hospitalization records from 2000). Accordingly, plaintiff's objection on this ground is overruled.

Next, plaintiff argues that the ALJ "failed to consider and in some cases even mention the testimony and written witness statements provided in support of Plaintiff's claim, and that this

15

error warrants reversal or remand." (Pl.'s Obj. 8.) The Magistrate Judge and this Court acknowledge that the ALJ "devoted only one sentence to the testimony" of plaintiff's witnesses and "failed to mention the letter statements submitted by Plaintiff's mother and sister." (Rep. & Rec. 27.) However, the Court agrees with the Magistrate Judge that this is not a basis for remand.

First, it cannot be said that the ALJ "failed to consider" witness testimony. (Rep. & Rec. 27; R. 15.) The ALJ's decision demonstrates that he considered the testimony of "claimant's friends," the only witnesses to testify at the hearing other than plaintiff.[7] (See R. 15.) As to the letter statements by plaintiff's mother and sister, they "are essentially duplicative of testimony provided by Plaintiff and her friends at the administrative hearing" and "do not add to the critical facts at issue." (Rep. & Rec. 27.) Therefore, the Court will not remand on this basis. See Terrey v. Astrue, 2007 WL 1655479 (E.D. Pa. June 6, 2007); Rutherford v. Barnhart, 399 F.3d 546, 553 (3d Cir. 2005) (refusing to remand where stricter compliance with a social security ruling would not have changed the outcome of the case); Fisher v. Bowen, 869 F.2d 1055, 1057 (7th Cir. 1989) (stating that "No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result").

## IV.  CONCLUSION

For all of the foregoing reasons, the Court overrules plaintiff's objections, and approves and adopts the Report and Recommendation as supplemented and amended in this

---

[7] The ALJ stated: "At the hearing, the claimant's friends testified that the claimant suffers from significant fatigue, which prevents her from being as active as she used to be." (R. 15.)

Memorandum.  Accordingly, the Court affirms the final decision of the Commissioner denying disability benefits.

                                          **BY THE COURT:**

                                          **/s/ Honorable Jan E. DuBois**
                                          **JAN E. DUBOIS, J.**